Rebecca B. Wilson, Appellant, *v.* P. O. Buchanan.

*Equity—Jurisdiction—Res judicata—Opening judgment.*

To render the adjudication of a court of law conclusive in a court of equity, the jurisdiction of the former must be broad enough to cover the whole ground, and leave no essential point untouched.

The courts of Pennsylvania exercise an equitable jurisdiction under the forms of law, and may afford relief against a judgment for any cause that would be available before a chancellor.

Where a rule to open or strike off a judgment has been discharged a court of equity will not subsequently entertain a bill to set aside and annul the judgment.

Wistar v. McManes, 54 Pa. 313, criticised.

*Equity—Specific performance—Pleading—Tender.*

A bill for specific performance is inadequate which does not contain a tender of the balance of the purchase money, or a statement of an adequate reason for a failure to make such tender.

Argued May 10, 1895. Appeal No. 5, July T., 1895, by plaintiff, from decree of C. P. McKean Co., Feb. T., 1895, No. 1, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Bill in equity to set aside a judgment, and for specific performance.

The bill alleged a contract dated Nov. 4, 1885, between appellee of the one part, and appellant (then Rebecca B. Pierce, since intermarried with Noah Wilson) and John Banks (who afterwards assigned his interest to her) of the other part, to transfer certain leasehold estate mineral right and oil property for the consideration of $3,000 then paid and $11,500 to be thereafter paid with interest, by proceeds of oil from the premises described; that certain oil property and a leasehold estate was included to which the appellee has never had title; that in ignorance of such want of title the appellant proceeded to operate the property and produce oil therefrom to the credit of the appellee as required by said contract; that on or about March 7, 1887, appellant and her associate having discovered that appellee had made misrepresentations concerning the condition of the wells and was violating his agreement in failing to make

monthly sales, the damages claimed were compromised in con-sideration of $667.50 in cash, a loan of $635, and a modification of contract whereby appellee should receive only seven eighths of the oil until balance paid together with the sum loaned, and then make title as required by original contract; that long afterwards and about three years after the oil had been entirely discontinued to appellee, and he had, as appellant understood, relinquished all claim in the premises, the production was trans-ferred, without objection on his part, from the Tidewater Pipe Company, Limited, where the original contract contemplated it should be run, into the pipe line department of the Emery Manufacturing Company, whereby all charges for storage were saved ; that the said John Banks sold to appellant on the 23d day of December, 1893 ; that appellee failed thereafter to make monthly sales without intermission, had not accounted for such default nor rendered statement of oil received.

The bill further alleged (par. 8) that the appellant ascertained on or about Jan. 1, 1890, that appellee was without good title, and consulted appellee thereon, who informed her in substance that he had no title to the property in question to convey, that he would execute no other paper and do nothing further in re-spect to a transfer; that meantime and in consequence of the discovery of said want of title appellant caused the propor-tionate part of the oil then running to credit of appellee to be withheld and thereafter run to her credit, of which appellee was duly apprised; that the appellee had then received from cash and sales of oil all but $988.47 of the contract considera-tion, and more than was justly due under the contract in full discharge thereof ; that appellee, admitting his inability to make the title in question, tacitly acquiesced in consequence thereof in the discontinuance of the oil to his credit, remained silent and took no action for about five years, nor offered to make any other settlement or compensation for the failure of his obligation, and it was alleged that the value of the oil so with-held was a grossly insufficient and inadequate measure of ap-pellant's damages or equivalent for said compensation; that appellant retained the property in question by reason of the said tacit understanding, and because she had no other available remedy for the breach of the contract, and made no tender of balance otherwise due for the reason that appellee having as-

serted his inability to make the title required and declined to do anything further about it, such tender would as appellant was advised be unnecessary and nugatory, and for the further reason that payment by means of oil was discontinued with the knowledge and tacit assent of the appellee, as aforesaid.

The bill further alleged that notwithstanding the premises, the appellee on or about Dec. 1, 1894, made an affidavit setting forth the discontinuance of said oil to his credit and caused a confession of judgment in ejectment for the entire premises to be entered against appellant at No. 216, December term, 1894, in the court of common pleas of McKean county, which confession purports to have been entered by virtue of a warrant of attorney contained in the original contract, and upon judgment so entered appellee caused a writ of habere facias possessionem to be issued a few days only before the return day of the writ, put an employee of appellee in possession of the premises and returned the writ; that on the last Saturday before the Monday on which the writ was returnable, appellant having learned of the issue of the writ, sought by petition to obtain a stay and to open the judgment, but the time was too short to present the facts in a full and satisfactory manner necessary to a proper understanding of the premises, hence the petition was refused; that appellant designing to seek an adequate remedy in said court upon presentation of the facts as soon as possible accordingly gave notice to the pipe line company having custody of the oil, and other pipe line companies whose offices are in the city of Bradford, of appellant's rights, and forbade delivery to appellee; that the notice being respected by said custodian company, the appellee, in order to defeat the rights of appellant, caused the tanks to be connected with the pipes of another company, the Tidewater Pipe Company, limited, into which he now proposes to run the whole production, make sale thereof and convert the proceeds to his own use.

The bill further alleged that the pumping of the wells on the premises was being neglected; that they were not being operated in a skillful and workmanlike manner; that the production was accordingly diminished, and serious and lasting injury being done to the wells which, if allowed to continue, would result in their practical destruction, to the great and irremediable damage of appellant;

That the said affidavit did not set forth the entire truth nor such nor sufficient facts to warrant the confession and entry aforesaid with reference to the authority in the contract; but that the action so taken was in execution of a purpose on the part of the appellee to fraudulently determine the contract by a pretended forfeiture and thereby deprive appellant of the property which she had acquired by payment of a full, fair and valuable consideration ;

That by virtue of the premises in fulfillment of the original contract, modified aforesaid, appellant was entitled to a conveyance of the entire property.

Wherefore appellant prayed for an injunction to restrain the pumping of the wells, further control thereof and interference with the repossession of appellant;

To restrain appellee from selling the oil or depriving appellant of credit therefor;

To restrain appellee from depriving appellant of the premises described in the original contract or any part thereof, and from exercising any ownership, control or possession therein ;

To restrain the appellee from making any sale, lease, mortgage or contract of, relating to, or in any manner affecting the property or any part thereof or interest therein ;

That the court decree that the judgment be set aside and annulled ; and that restitution be awarded by restoration of the property to the appellant;

That the appellee be decreed to specifically perform and make conveyance accordingly, and that in compensation for default a proper allowance or deduction be made from the contract consideration ;

That an account be taken of such damages as well as of all moneys received by appellee from sales of oil, and of all damages suffered by appellant in consequence of being deprived of the possession of the premises, and that thereupon appellee be decreed to pay over to appellant such sum as upon account she may be entitled to receive ;

And for such other relief as equity and good conscience may require and to the court may seem meet.

The appellee, with formal protestation, demurred in brief:

1. That judgment in ejectment having been entered, and

application to open the same having been refused, this court had no power to open or set aside the said judgment.

2. That no tender of balance of consideration having been made by appellant he could not maintain a bill for specific performance.

3. That the bill did not set forth sufficient facts to entitle appellant to specific performance, that upon the facts alleged the court had no jurisdiction, and the appellant had an adequate remedy at law.

MORRISON, J., filed the following opinion :

" It was well said by the defendant's learned solicitors at the argument that the plaintiff's bill is in effect : 1. A substitute for an action in ejectment.   2. A rule to strike off a judgment. 3. A bill to enforce specific performance.

" The first, second, third and fourth paragraphs of the prayers in the plaintiff's bill, in effect, ask the court of equity to eject the defendant from the oil producing property described in the bill, which property is an interest in land for which ejectment will furnish an adequate remedy to the plaintiff. It is unnecessary to cite authorities to sustain the well settled doctrine that equity will not entertain jurisdiction where the plaintiff has an adequate remedy at law : Richard's App., 100 Pa. 51 ; Kennedy's App., 81* Pa. 163.

" It clearly appears on the face of the bill that the defendant, acting under the forfeiture clause of the agreement of November 4, 1885, caused an action in ejectment to be entered on the law side of this court, and a final judgment therein was entered in favor of said Buchanan for the premises described in the bill, and upon a writ of habere facias possessionem issued thereon the sheriff put the plaintiff herein out of possession and delivered to the said Buchanan the full, complete and exclusive possession of the premises more than a month before the filing of the bill.   Therefore it is plain that the real purpose of this bill is to put the defendant out of possession and restore the plaintiff to the possession that she lost by proceedings at law. This, we think, appears very plainly by reading the bill.   The judgment in ejectment had accomplished its purpose long before the bill was filed.   It is well settled that the execution of the writ, for proper reasons, might have been restrained in equity, but it is too late to do that after the writ has been fully exe-

cuted by the sheriff and returned into court, which was the situation in this case when the bill was filed.

" It requires no argument or citation of authorities to sustain the position that a judgment on the law side of the court will not be stricken off by a bill and decree in equity.

" We are not able to see how the plaintiff can have specific performance of the contract enforced in this action for several reasons :

" 1. Because she plainly violated the terms of the contract by running the oil into another pipe line than the one specified in the contract and selling the oil and converting it to her own use and refusing to pay the ·purchase money due on the contract.

" 2. The plaintiff admits that she owes nearly one thousand dollars of the purchase money, which is past due, and she has neither paid it nor offered to pay it to the defendant. How then can she have specific performance of the contract ? She does not even offer to perform, or aver willingness so to do. Where the vendor is in lawful possession the vendee, to recover under his equitable title, must have tendered balance of purchase money due, and have the money in court: Dwyer v. Wright, 162 Pa. 405 ; Bell v. Clark, 111 Pa. 92.

" By the judgment in ejectment above mentioned it appears that the plaintiff herein owes the defendant about twenty-five hundred dollars purchase money. In her bill she admits owing nearly one thousand dollars, and she does not explain or undertake to show why she does not owe the larger sum. But for the purposes of the question we are considering it is not material which is the correct amount.

" The plaintiff realizing the difficulty of enforcing specific performance without offering to pay the purchase money makes a lame attempt, in paragraph 8 of the bill to excuse herself on the ground that she was informed by the defendant in substance, that he had no title to said property to convey ; that he would execute no other paper than he had already executed nor do anything further in respect to a transfer of said title. In this connection it should be noticed that the plaintiff does not point out a single defect in the title.

" She does not aver that she was ever disturbed in the possession and enjoyment of any part of the property, and she

stands admitting that she had had the benefit of the entire production from the date of the contract in 1885 till December term, 1894, when she was ejected by the sheriff in pursuance of a judgment and writ, based upon her palpable violation and forfeiture of her contract. If the title was bad it is remarkable that in all this elaborate bill, not one defect is pointed out. If the defendant did say, in substance, what she avers in paragraph 8, we think it a proper construction that he meant to say that he would execute no other or better title than he had agreed to do by their contract. Certainly he was not required to execute any other paper until he was paid in full, or a tender was made and a demand made for the conveyance of the legal title.

" A plaintiff who has been in the quiet possession of premises for nearly ten years, under an equitable title, and has not paid the purchase money, nor offered to pay it, and is now out of possession by proceedings at law, does not stand on very solid ground when asking for a decree of specific performance of a contract which had been forfeited by a judgment at law, based on such plaintiff's violation of the terms of the contract, and especially is this so, where no defect in the title is pointed out, and where the defendant acquired lawful possession of the premises.

" We sustain the demurrer, and enter judgment thereon in favor of the defendant.

" And now, to wit, March 23, 1895, it is ordered, adjudged and decreed that the plaintiff's bill be dismissed, with costs in favor of the defendant."

*Error assigned* was in dismissing bill.

*R. B. Stone, J. M. McClure*, with him, for appellant.—A formal tender of performance is unnecessary where the defendant has admitted his inability to perform: Kerst v. Ginder, 12 Leg. Int. 271; Am. & Eng. Ency. of Law, 899; Hocking v. Hamilton, 158 Pa. 107.

It would be grossly inequitable to permit a forfeiture on account of the failure to pay a balance of consideration money in cases where the purchaser might defend himself in an action for the recovery of such balance: Wilson's App., 109 Pa. 606 ·

Wilson v. Cochran, 46 Pa. 229; Wills v. Mfg. Gas Co., 130 Pa. 222; Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235; Thompson v. Christie, 138 Pa. 230; Lynch v. Ver. Fuel Gas Co., 35 W. N. C. 558.

In courts of law, equity will not enforce a forfeiture or penalty except when exclusively essential to do justice: Addison on Contracts, par. 720; Oil Creek R. R. Co. v. Atl. & G. W. R. R., 57 Pa. 65; Marshall v. Vicksburg, 15 Wall. 149; McCormick v. Rossi, 70 Cal. 474; Manhattan Life Ins. Co. v. Smith, 44 O. St. 167; 1 Pom. Eq. Jur. 592, 2106; Copper Mining Co. v. Ormsby, 47 Vt. 709; Harrisburg v. Baker, 1 Pet. (U. S.) 232; Watts v. Watts, 11 Mo. 547; Roberts v. Wilkinson, 34 Mich. 129; Streeper v. Williams, 48 Pa. 450; Anderson's Dict. of Law, pp. 468, 469; Ins. Co. v. Eggleston, 96 U. S. 572; Olmstead v. Farmer's Mut. Life Ins. Co., 50 Mich. 200; 8 Am. & Eng. Ency. of Law. 446, 449, citing Giles v. Austin, 62 N. Y. 486; Rector v. Higgins, 48 N. Y. 533; Nelson v. Carrington, 4 Munf. (Va.) 332; Bracebridge v. Buckley, 2 Price (Exch.) 200; Hill v. Barclay, 16 Ves. 402; Giles v. Austin, 46 How. (N. Y.) 269.

In a proper case, notwithstanding the possession of the premises has changed, the judgment will be opened, and the possession restored to the tenant: Tyler on Ejectment, 441; Doe v. Williams, 2 Adolph & Ell. R. 381; Doe v. Gruble, 5 Barn. & Cres. R. 457.

The denial of relief because of a prior adjudication at law is limited to cases where the party had a trial or an opportunity of a trial in which he might have availed himself of his equities: Wistar v. McManes, 54 Pa. 318; Emery v. Patton, 9 Phila. 125; Mitchell on Motion and Rules, 74; 2 Brewster Pr. 1339; Steiner v. Scholl, 163 Pa. 465.

To oust the jurisdiction of equity the plaintiff's remedy at law must be full, complete and adequate: Skilton v. Webster, Bright. 203; Kirkpatrick v. McDonald, 11 Pa. 387; Bank of U. S. v. Biddle, 2 Pars. 31; Weir v. Mundell, 3 Brewst. 594; Bank of Kentucky v. Schuylkill Bank, 1 Pars. 180; Carnegie Nat. Gas Co. v. Phila. Co., 158 Pa. 317; Allinson's App., 77 Pa. 221.

*W. J. Milliken* and *H. King,* for appellee.—The jurisdiction

of courts of equity in Pennsylvania is derived exclusively from statute, and when not conferred by statute does not exist at all. We look in vain for any statute empowering a court of equity, sitting in chancery jurisdiction, to annul the judgment of a court below : Stephens v. Forsythe, 14 Pa. 67 ; Cochran v. Eldridge, 49 Pa. 365.

The application to set aside judgment obtained in a court of law is essentially a common law proceeding, and lies peculiarly within the province of a common law court: Mitchell on Motions and Rules, 76.

Where the main purpose of the bill is restitution of possession even though accompanied with prayer for discovery, account and the like, it is demurrable, and property dismissed as an ejectment bill : Long's App., 92 Pa. 171 ; Richard's App., 100 Pa. 51.

The bill admits that $988.47 has long been due upon the contract, that neither this balance nor any balance of purchase money whatever was ever tendered the appellee, and in the absence of such tender specific performance cannot be decreed : Bell v. Clark, 111 Pa. 92 ; Dwyer v. Wright, 162 Pa. 405 ; McGrew v. Foster, 113 Pa. 642 ; Orne v. Kittanning Coal Co., 114 Pa. 172 ; Geist v. Steir, 134 Pa. 216 ; Krumbhaar v. Birch, 83 Pa. 426 ; Herrod v. Blackburn, 56 Pa. 103 ; Holton v. Walker, 5 Cent. Rep. 458.

There is no mutuality in the contract: Wilson v. Clark, 1 W. & S. 555 ; Bodine v. Glading, 21 Pa. 50 ; Greenlee v. Greenlee, 22 Pa. 225 ; Meason v. Kaine, 63 Pa. 335 : Ballou v. March, 133 Pa. 64.

The bill cannot be maintained for another person. It nowhere states that appellant has already performed her part of the contract or that she is ready and willing to perform it : Brightley's Eq., 189 ; Chess's App., 4 Pa. 52.

In the present case the forfeiture was taken advantage of in strict accordance with the terms of the contract: Emery v. DeGolier, 117 Pa. 153.

OPINION BY MR. JUSTICE FELL, July 18, 1895 :

There has been a lack of uniformity in the decisions in this state upon the question whether the hearing and dismissal of a motion for equitable relief in a court of law will preclude a

subsequent appeal to chancery. The general rule is that to render the adjudication of a court of law conclusive in a court of equity the jurisdiction of the former must be broad enough to cover the whole ground and leave no essential point untouched. When this is the case, especially in courts which administer equity in common law proceedings, there seems to be no substantial reason why the judgment should not be final. If a court of equity takes jurisdiction it is simply to retry the same case on the same grounds, and it necessarily delays the course of justice.

The case of Wistar v. McManes, 54 Pa. 318, in which it was held that the refusal of a court to open a judgment on the ground of usury did not preclude the defendant from coming into equity for an injunction, virtually overruled Gravenstein's Appeal, 49 Pa. 310, where the refusal of a court of law to set aside a judgment on the ground of fraud was said to preclude the defendant from coming into equity.

The decision in Wistar v. McManes, supra, is in harmony with the doctrine that a purely equitable defense, which could not be considered in a legal forum, although made and overruled at law, is ground for an injunction, but it overlooks the fact that in this state a court of law can consider every equity set up. Referring to this decision the learned editors of Leading Cases in Equity in the notes to the Earl of Oxford's Case, vol. 2, part 2, p. 1364, say: " The decision is more significant because the courts of Pennsylvania exercise an equitable jurisdiction under the forms of law, and may afford relief against a judgment for any cause that would be available before a chancellor." In MITCHELL on Motions and Rules at Common Law, p. 78, it is said: " The rule to open judgment and let the defendant into a defense is peculiar to Pennsylvania practice, and is a clear example of our system of administering equity under common law forms." The learned author, in referring to Wistar v. McManes and the act of 1877 giving the right to appeal from the refusal to open a judgment, says : " The effect of this statutory extension of the remedy by rule on the question of barring a subsequent bill in equity for the same matter and consequently on the practice, cannot perhaps be safely predicted." In 1879, the same year in which this was written, Gordinier's Appeal, 89 Pa. 528, was decided, in which

it was held that after the discharge of a rule to show cause why a habere facias possessionem should not be set aside it was too late to apply for an injunction.

In Frauenthal's Appeal, 100 Pa. 290, a decree had been entered in the common pleas enjoining the proceedings to collect a judgment after the discharge of a rule taken for the same purpose. In the opinion reversing the decree both Wistar v. McManes and Gordinier's Appeal are discussed, and it is said : " If we adhere to the last decision of the court it is fatal to the bill. Why should we not so adhere ? Under our system of jurisprudence the courts of common law have full equity powers. Many of them may be invoked either by motion and rule or by bill. In those cases where it is optional for a party to elect in which manner he will apply for the exercise of those equitable powers and he does so elect, and the court with full power to grant the desired relief after full hearing refuses it, why should not such a decision be conclusive? "

The bill filed in this case and the petition for a rule to open judgment rest upon the same allegations of fact. They are remedies of which the defendant had her choice, and having failed in one she has resorted to the other without showing any ground for relief from the effect of the decision against her, which on principle and authority must be held to be conclusive.

In its other features the bill is, as stated by the learned judge of the common pleas, an ejectment bill, and a bill for specific performance without a tender of the balance of the purchase money or the statement of an adequate reason for the failure to do so.

The decree is affirmed at the cost of the appellant.